IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS R. GONZALES,

                Plaintiff,

                      Civil No. 10-3735(NLH)

v.

                      **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

**APPEARANCES:**

JASON LANELL THOMPSON
LEVENTHAL, SUTTON & GORNSTEIN, ESQS.
3800 HORIZON BLVD.
SUITE 101
TREVOSE, PA 19053-4947
    On behalf of Plaintiff

ELIZABETH ROTHSTEIN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI

of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, December 1, 1999.  For the reasons stated below, this Court will reverse the ALJ's decision and remand the matter for further proceedings.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff claims that since December 1999, his severe low back pain has rendered him completely disabled and unable to work.  Plaintiff previously worked as a maintenance engineer for a high-rise office building and was the troubleshooter for electrical and HVAC repairs.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled, as he retained the ability to perform light work.  Plaintiff appealed the decision.  The Appeals Council reviewed the ALJ's decision, and upheld it, thus rendering it as final.  Plaintiff now seeks this Court's review.

**II.  DISCUSSION**

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's

2

application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

    A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

4

an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as

5

disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

    The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

    1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

    2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

    4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

    5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional

>     capacity"), age, education, and past work experience
>     to determine whether or not he is capable of
>     performing other work which exists in the national
>     economy.  If he is incapable, he will be found
>     "disabled."  If he is capable, he will be found "not
>     disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of

disability (Step One).  The ALJ next found that Plaintiff's low back pain was severe (Step Two).  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing his previous job as a maintenance engineer, Plaintiff had the residual functional capacity (RFC) to perform other jobs at the light work level (Step Five).

Plaintiff presents three arguments as to why the ALJ decision should be reversed:  (1) the ALJ did not afford Plaintiff's treating physician's reports the proper weight; (2) the ALJ substituted his own judgment rather than relying upon the medical evidence; and (3) the ALJ improperly applied the "Grid" Rules or "Grids," which comprise a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC.  See 20 C.F.R. pt. 404, subpt. P, app. 2.

As a primary matter, the Court notes that the ALJ was tasked with determining whether Plaintiff was disabled as of December 1, 1999, or at least by December 31, 2003, which was the last day of Plaintiff's insured status.  With that timeframe

8

in mind, the Court does not find fault with the ALJ's assessment of Plaintiff's treating physician's reports, as he thoroughly explained why he was affording little weight to Plaintiff's doctor's April 23, 2007 retrospective report of his December 2002 through September 2005 treatment of Plaintiff.  (R. at 33.) See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p (providing that the treating doctor's opinion will carry more weight than any other doctor only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence of record).

The Court also does not find fault in the ALJ's assessment of the medical evidence.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted); see also Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009) ("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another.").

The ALJ did not find, as Plaintiff argues, that Plaintiff

9

was not disabled because he did not try every treatment option suggested to him.  Such an endeavor is not a requirement for a claimant to be successful on his disability claim.  See, e.g., Griffies v. Astrue, 855 F. Supp. 2d 257, 274 (D. Del. 2012) (citing Foley v. Barnhart, 432 F. Supp. 2d 465, 481 (M.D. Pa. 2005); Brosnahan v. Barnhart, 336 F.3d 671, 677 (8th Cir. 2003)) (explaining that even though the record does not establish why the plaintiff did not attempt each and every one of the individual treatment options, it is not implausible that she had good reasons, and the failure to do so should not be held against her).  Instead, the ALJ recognized the medical records that demonstrated that Plaintiff had only received conservative treatment of physical therapy and medications, and noted that Plaintiff had not, for whatever reason, undergone more invasive procedures such as injections and surgery, as recommended by at least two doctors.  (R. at 33.)  The ALJ did not substitute his own judgment in lieu of the medical evidence by considering that even without the more intensive treatment options Plaintiff was still able to perform a range of activities.[1]

---

[1] Correspondingly, the ALJ did not err in his assessment of Plaintiff's credibility as it related to his subjective complaints of pain.  See 20 C.F.R. § 404.1529(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and

Despite the ALJ's proper assessment of Plaintiff's treating physician and the other medical evidence in the record, the ALJ's decision must be reversed.  The ALJ thoroughly supported the first four steps of the sequential step analysis, and those findings cannot be faulted.  The thoroughness of the ALJ's decision abruptly stops, however, when the ALJ makes his Step Five finding as to Plaintiff's residual functional capacity (RFC) and his ability to perform light work.  In conclusory fashion, the ALJ determined that even though Plaintiff could no longer perform the medium exertional level of his past employment, he retained the RFC to perform light work, without

---

laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you.  We also consider the medical opinions of your treating source and other medical opinions. . . . ."); Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999) (explaining that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony); SSR 96-7p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence. . . .").

any further elaboration.  (R. at 35.)   The ALJ erred in this regard.

The Regulations define "light work" as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).  Light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.  SSR 83-10.  The ALJ does not explain, as he is required to, how Plaintiff's RFC fits into this category.

The ALJ's failure to articulate the reasons for how Plaintiff was capable of performing light work presents three problems.  First, the ALJ's use of the "Grids" would have been permissible if the ALJ had articulated how Plaintiff's RFC qualified him for light work.  See Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 119 (3d Cir. 1995) (citing 20 C.F.R. part 404, subpart P, Appendix 2, § 200.00(d); SSR 83-10 at 26, 30; Social Security Ruling 83-11) (other

12

citations omitted) ("The ALJ can assess the availability of work in the national economy for the applicant using the 'grid' if the claimant can perform 'substantially all' of the tasks required for 'light work' and 'sedentary work' but cannot perform 'substantially all' the tasks required in 'medium work.'"); see also Heckler v. Campbell, 461 U.S. 458, 468-70, (1983) (finding that when the claimant's residual functioning capacity fits within the definitions promulgated in Department of Health and Human Service regulations, the Secretary can meet her burden of demonstrating that work exists for the claimant in the national economy by reference to tables promulgated by administrative rulemaking (the "Grids")).  Because the ALJ did not match Plaintiff's abilities with the requirements of light work, the ALJ's use of the Grids was improper.

The second problem with the ALJ's summary conclusion that Plaintiff was capable of performing light work is that it is in conflict with the ALJ's recognition of Plaintiff's pain.  Even though the ALJ did not fully credit Plaintiff's subjective complaints of pain, and he may properly do so, the ALJ found that "the claimant's pain during the time period at issue restricted his residual capacity to the full range of light [work]."  (R. at 35.)  Because Plaintiff's pain was substantial

13

enough to reduce his ability to work from the medium level to the light level, the ALJ was required to do more than rely upon the Grid definitions to determine Plaintiff's ability to work. See 20 C.F.R. § 404.1569a(c)-(d); 20 C.F.R. § 404, subst. P, app. 2, § 200(d)-(e); Konya v. Barnhart, 391 F. Supp. 2d 273, 283-84 (D. Del. 2005).

The third problem is that the ALJ's mechanical use of the Grids was inappropriate in this "borderline" age case. The Grids make bright-line distinctions by age. A "younger person" is someone under age 50, and that person's age is not considered to "seriously affect [the] ability to adjust to other work." 20 C.F.R. § 404.1563(c). For ages 45-49, that person may be considered "more limited in their ability to adjust to other work than persons who have not attained age 45." Id. If a person is "closely approaching advanced age (age 50-54)," a person's age along with a severe impairment and limited work experience will be considered to seriously affect the person's ability to adjust to other work. Id. § 404.1563(d). The regulations admonish, "We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or

14

decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." Id. § 404.1563(b).

Plaintiff was three months shy of his 50th birthday on December 31, 2003, the last day of his insured status. The ALJ did not take Plaintiff's age into consideration when he used the Grids to determine that Plaintiff had the RFC to perform light work. This is particularly important here because Plaintiff was close to age 50, and Plaintiff's age was required to be considered to seriously affect his ability to adjust to other work. See Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir. 1985) ("Where a procrustean application of the Grids results in a case that, but for the passage of a few days, would be decided differently, such an application would appear to be inappropriate. Section 404.1563(a) therefore serves an important purpose in the regulatory scheme, and ALJs should adhere to its clear language.").

As the Third Circuit observed, "[C]ourts recognize that the Grids provide useful standards and allow for consistent, less complex decision-making. But judicial approval of these standards is premised on the assurance that SSA will not employ them to produce arbitrary results in individual cases." Kane,

776 F.2d at 1134. In this case, the ALJ's conclusory determination that Plaintiff's RFC fit into the Grids definition of light work does not allow this Court to afford judicial approval of the ALJ's decision.

This finding does not, however, call for the immediate award of benefits to Plaintiff. Plaintiff may indeed have been capable, as of December 2003, to perform light work, but the ALJ is required to provide the proper analysis and support to reach that conclusion. Thus, this Court will follow the Third Circuit in Jesurum, where the ALJ had improperly relied upon the Grids exclusively for a claimant who suffered from severe back pain: "Having determined that the Secretary's decision must be reversed, we must determine whether it is appropriate to remand this case or to direct the payment of benefits. While it was improper to apply the Grids in this case, the statute permits the Secretary to prove that the claimant is capable of performing other jobs in the national economy through other methods. Preferably, this is done through the testimony of a vocational expert. To give the Secretary this opportunity, it is appropriate to return this case for further proceedings." Jesurum, 48 F.3d at 121.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled as of December 1, 1999, is not supported by substantial evidence. Accordingly, the decision of the ALJ will be reversed, and the case remanded for further proceedings consistent with this Opinion.[2] An accompanying Order will be issued.


Date: October 8, 2015      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[2] This Court recognizes that a significant passage of time has occurred since Plaintiff's alleged onset of disability. Plaintiff applied for benefits in June 2005, and after the claim was initially denied, Plaintiff made a request for a hearing in June 2006, which was held in January 2008. The ALJ issued his decision in April 2008. Plaintiff, appearing pro se, filed his appeal with this Court in July 2010. Because Plaintiff did not effect service of his complaint, the case remained dormant until July 2012, when Plaintiff's counsel entered his appearance. The SSA was finally served in March 2013. Briefing was completed in September 2013. Due to what appears to be an administrative error, the administrative record was lost, and a reissued administrative record was received by the Court in March 2015. Because of the maturity of this case, the SSA is encouraged to reevaluate Plaintiff's claim as soon as possible.